November 14, 2019

**By ECF**

Honorable Loretta A. Preska
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street, Room 12A
New York, NY 10007

        Re: *United States v. Tuere Barnes*, Case No. 1:04-CR-00186-LAP-3

Dear Judge Preska:

        We represent Tuere Barnes *pro bono* and respectfully submit this motion requesting a resentencing hearing at which Mr. Barnes is present pursuant to the First Step Act of 2018, Pub. L. 115-391, § 404, 132 Stat. 5194, 5222 (2018) [hereinafter FSA]. On January 20, 2019, Mr. Barnes wrote to the Court requesting a sentence reduction in light of the newly retroactive effect of the FSA or pursuant to 18 U.S.C. § 3582.  The Court referred Mr. Barnes' case to the Federal Defenders of New York who in turn referred his case to our firm—Debevoise & Plimpton LLP—and we agreed to represent Mr. Barnes.  We respectfully request that the Court exercise its discretion to reduce Mr. Barnes' sentence to the applicable mandatory minimum of fifteen years or 180 months.

        Mr. Barnes has been in federal custody for fourteen years, and with good time, Mr. Barnes has now served sixteen years of his twenty-five year sentence.  Prior to beginning his federal sentence, he was held in state custody for nineteen months on these charges.[1]  He is eligible to be resentenced under the FSA and a reduced sentence is warranted in light of Congress' clear intent to reduce the sentence of prisoners like Mr.

---

[1] Mr. Barnes was brought into state custody in December 2003 for violating curfew while on parole from state charges.  *See* Min. Entry Proceedings Before Judge Robinson 30:20-24, July 30, 2010 [hereinafter Sentencing Tr.].  In February 2004, the federal indictment on this case was filed.  The state parole proceedings never went forward and Mr. Barnes remained in state custody until October 2005 on these federal charges. *Id*. at 30:24-31:3. At sentencing, Judge Stephen C. Robinson declined to give Mr. Barnes credit for the nineteen months he served in state custody on these federal charges, notwithstanding the fact that Mr. Barnes should have been transferred from state to federal custody after ninety days of being held in state custody, as opposed to twenty-two months, to reflect the penalty for violating curfew on parole. *Id*. at 59:24-61:17.

Barnes and in consideration of his exemplary conduct and work experience while incarcerated.

## Background

On May 22, 2009, following a jury trial, Mr. Barnes was convicted of seven offenses:

- racketeering for his participation in a drug trafficking enterprise[2] in violation of 18 U.S.C. § 1962(c)-(d) (Counts One and Two);
- conspiracy to distribute and possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 (Count Three);
- conspiracy to kidnap Eddy Solano-Herrera and the kidnapping of Eddy Solano-Herrera in violation of 18 U.S.C. § 1959(a)(1),(2), and (5) (Counts Twelve and Fourteen);
- conspiracy to murder Eddy Solano-Herrera in violation of 18 U.S.C. § 1959(a)(5) (Count Thirteen); and
- possession of a firearm in relation to the kidnapping of Eddy Solano-Herrera in violation of 18 U.S.C. § 924(c) (Count Thirty-Two) *See* J. 1-2, ECF No. 575.

The jury found that the drug trafficking conspiracy involved at least fifty grams of crack cocaine and at least 500 grams—but less than two kilograms—of powder cocaine. *See* Min. Entry Proceedings Judge Robinson 3868:5-14, May 22, 2009.

On July 30, 2010, Judge Robinson sentenced Mr. Barnes to 300 months imprisonment on Counts One, Two, Twelve, Thirteen, Fourteen, and Thirty-Two and 240 months on Count Three to run concurrently, followed by a three-year period of supervised release. J. 3, ECF No. 575. For purposes of calculating Mr. Barnes' sentencing range under the advisory United States Sentencing Guidelines ("Guidelines"), Judge Robinson found that the drug conspiracy (Count Three) involved at least five kilograms of crack cocaine and at least two kilograms of powder cocaine. Sentencing Tr. 11:4-7. Judge Robinson also determined that drug trafficking constituted the appropriate predicate offense for Count Thirty-Two. *Id.* at 51:5-8.

The Court's analysis of Mr. Barnes' sentencing range on Counts Twelve, Thirteen, Fourteen, and Thirty-Two was inextricably linked with the Guidelines calculation on Count Three. As Judge Robinson explained at the sentencing hearing with respect to the § 924(c) count, "the appropriate underlying crime for that was a drug crime, not a crime of violence. I think that that all came about in the context of trying to

---

[2] The drug trafficking enterprise was led by Mr. Barnes' older brother Khalid Barnes. His other two older brothers, Dawud Barnes and Yusef Barnes, also participated in the drug trafficking organization. All three were convicted of related charges in separate proceedings. *See* Op. and Order, Jan. 25, 2008, ECF No. 338.

rob drugs, and that really was the arching play and theme there." *See* Sentencing Tr. 51:5-10. With Count Three anchoring the Guidelines calculation, Judge Robinson employed a grouping analysis to determine the sentencing range for Mr. Barnes. *Id*. at 15:16-16:7. Starting at a base offense level of thirty-six for the drug trafficking conspiracy, the Court added two levels for Mr. Barnes' role in the offense and two points for obstructing justice. *Id.* at 12:9-23, 13:5-18. Since Judge Robinson found that the "kidnapping was done in conjunction with a narcotics offense," because "the whole reason for the Eddy Solano-Herrera kidnapping event," was "an attempt to get drugs," he added an additional four points to the base level offense pursuant to Guidelines § 2A4.1(7)(b) for a total of forty-four. *Id*. at 15:23-16:4. Pursuant to the Guidelines, the Court capped the base offense level at forty-three, but added two points for the multiple count adjustment pursuant to Guidelines § 3D1.4, resulting in a total offense level of forty-five. *Id*. at 16:7. Based on a total offense level of forty-five with a criminal history category of IV, the Court determined that Mr. Barnes' Guidelines range was life imprisonment. The Court, however, declined to impose a life sentence on Mr. Barnes, instead imposing a non-Guidelines sentence of 300 months. *Id.* at 56:5-11. In its Statement of Reasons appended to the Judgement, the Court justified its deviation from the Guidelines on the basis of Mr. Barnes' history of "parental neglect and physical abuse," the "sentencing disparities with other members of the conspiracy," and Mr. Barnes' "substantial attempts at rehabilitation since being incarcerated." Attach., Statement of Reasons 3, J., ECF No. 575.

On February 19, 2019, the United States Probation Office filed a PSR addendum in response to Mr. Barnes' First Step Act motion. Suppl. Presentence Report, Feb. 19, 2019. Although the probation officer indicated that Mr. Barnes satisfied threshold eligibility requirements under the FSA, she nevertheless concluded that he was "precluded from a sentencing reduction." *Id.* at 2. For reasons explained below, we disagree. Mr. Barnes is eligible for relief under § 404 of the First Step Act because the penalties associated with his statute of conviction for the drug conspiracy were modified by the Fair Sentencing Act. Mr. Barnes was sentenced before August 3, 2010, is still serving his sentence for a conviction involving crack, and his sentence is subject to a mandatory minimum sentence that has been changed under the Fair Sentencing Act. *See* FSA § 404(b).

**I.     Mr. Barnes Is Eligible for a Reduced Sentence Under the FSA.**

The Fair Sentencing Act was signed into law on August 3, 2010 (four days after Mr. Barnes was sentenced) with the aim of rectifying a penalty scheme for crack cocaine offenses that the public and the United States Sentencing Commission had long determined was far too harsh and had a disparate impact on African-American defendants. *See Dorsey v. United States*, 567 U.S. 260, 268-69 (2012); *see also United States v. Sampson*, 360 F. Supp. 3d 168, 169 (W.D.N.Y. 2019) (finding the Fair Sentencing Act of 2010 "reduced the statutory penalties for cocaine based offenses" in

order to "alleviate the severe sentencing disparity between crack and powder cocaine") (internal citations omitted).

The Fair Sentencing Act went into effect immediately and the Supreme Court subsequently held that the new penalty structure applied to any defendant sentenced after August 3, 2010, even if the offense was committed prior to that date. *Dorsey*, 567 U.S. at 278. However, the Fair Sentencing Act of 2010 did not apply retroactively to sentences imposed between 1986 and August 3, 2010.

The FSA, enacted on December 21, 2018, provided additional relief by expanding the effect of the Fair Sentencing Act. The FSA allows the court to reduce prison sentences imposed under the pre-Fair Sentencing Act penalty scheme that were ineligible for sentence reduction under the Fair Sentencing Act.

Section 404 of the FSA provides that for individuals like Mr. Barnes, who were convicted under a "covered offense"—"a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." The Court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Pub. L. 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." FSA §§ 404(a)-(b). Congress made clear that an inmate's prison sentence can be reduced without limitation other than the statutory mandatory minimum. *See id.*

### A. Based on the Drug Quantity Found by the Jury, Mr. Barnes is Eligible for a Sentence Reduction on Count Three.

Mr. Barnes is eligible for relief under § 404 of the First Step Act because the penalties associated with his statute of conviction were modified by the Fair Sentencing Act. *See United States v Rose*, 379 F. Supp. 3d 223,228 (S.D.N.Y. 2019) (rejecting the Government's argument that the Court should assess the defendant's actual conduct, as opposed to the statute of conviction, when determining whether a defendant is eligible to seek relief under § 404 of the FSA); *see also United States v. Maupin*, No. 19-6817 (4th Cir. Sept. 9, 2019) (finding the language of the statute "creates a clear relationship between section 846 and 21 U.S.C. § 841(b)(1)"). The jury convicted Mr. Barnes for participating in a drug trafficking conspiracy involving at least fifty grams of crack cocaine. *See* Min. Entry Proceedings Judge Robinson 3868:5-14, May 22, 2009. For the purposes of determining Mr. Barnes' sentencing range, Judge Robinson found that the drug conspiracy involved five kilograms of crack cocaine. *See* Sentencing Tr. 11:4-7.

At the time of Mr. Barnes' sentencing, the Court's departure from the jury findings on drug quantity did not impact the applicable mandatory minimum, but this has since changed. Pre-Fair Sentencing Act, an offense involving fifty grams or more of crack cocaine carried a mandatory minimum of ten years. *See* § 841(b)(1)(A) (2010). After the Fair Sentencing Act, a drug quantity of fifty grams of crack cocaine would

4

qualify for a mandatory minimum of five years.  *See* §§ 841(b)(1)(A)(iii); 841(b)(1)(B)(iii).  Mr. Barnes should be resentenced based on the drug quantity found by the jury, in accordance with the rule articulated by the Supreme Court in *Alleyne v. United States*, 570 U.S. 99, 103 (2013) (holding that any fact that increases a mandatory minimum sentence for a crime is an "element" of the crime, not a "sentencing factor," and must be submitted to the jury).  Courts in the Second Circuit have repeatedly relied on this logic.  *See United States v. Gonzalez*, 420 F.3d 111, 133-34 (2d. Cir. 2005) (finding that "drug quantities specified in 21 U.S.C. § 841 are elements that must be pleaded and proved to a jury or admitted by a defendant to support any conviction on an aggravated drug offense."); *see also Rose*, 379 F. Supp. 3d at 223 (rejecting the Government's position that Defendants were responsible for 1.5 kilograms of crack cocaine based on the judge's findings as opposed to the jury's findings of fifty grams or more of crack cocaine since "any fact that served as the basis for a mandatory minimum sentence had to have been found by a jury beyond a reasonable doubt, rather than found by a judge by a preponderance of the evidence"); *United States v. Martinez*, No. 04 CR 4820, 2019 WL 2433660, at *2 (S.D.N.Y. June 11, 2019) (finding that "the phrase 'violation of a Federal criminal statute' refers to the amount charged in the indictment upon which [Defendant] was convicted, not the amount attributed to him by the judicial finding.").

We ask the Court to resentence Mr. Barnes according to the statutory minimum associated with the jury's finding on drug quantity and reduce Mr. Barnes' sentence for Count Three from 240 to 60 months under 21 U.S.C. § 841(b)(1)(B).  Applying the sentencing enhancement under 21 U.S.C. § 851 for Mr. Barnes' prior felony drug conviction, the mandatory minimum on Count Three is doubled from 60 to 120 months.  *See* § 841(b)(1)(B).  With the additional five years for violating § 924(c), the mandatory minimum on Count Three is fifteen years, as opposed to twenty-five.  However, a reduction in sentence for the drug conspiracy (Count Three) would not functionally reduce Mr. Barnes' current sentence.  Accordingly, we also ask that the Court exercise its discretion to reduce Mr. Barnes' sentence from 300 to 180 months in accord with the applicable mandatory minimum sentence, in recognition of the relationship between Mr. Barnes' sentence on Count Three and the remaining counts, mitigating factors in the defendant's family history, and Mr. Barnes' extraordinary efforts toward rehabilitation while incarcerated.

**II.     The Court May Exercise Its Discretion to Reduce Mr. Barnes' Sentence.**

Eligibility under the FSA is straightforward:  a defendant is eligible if he was convicted of a crack-cocaine offense, was sentenced when the pre-FSA statutory penalties were still in effect, and continues to serve a sentence that has not already been reduced to post-Fair Sentencing Act levels.  Mr. Barnes satisfies all three requirements.

Once a defendant is eligible for a reduction in sentence on any count, the FSA grants broad discretion to the district court in deciding whether to impose an overall reduced sentence. This authority should be construed as broadly as possible, consistent with the remedial purpose of the legislation. "Both the Fair Sentencing Act and the First Step Act have the remedial purpose of mitigating the unfairness created by the crack-to-powder cocaine ratio, and the statutes should be construed in favor of broader coverage." *Rose*, 379 F. Supp. 3d at 229 (reducing the sentence of defendant convicted for conspiracy to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) from twenty-five years to 184 months); *see also United States v. Allen*, 384 F. Supp. 3d 238, 242 (D. Conn. 2019) ("Congress wanted to further the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that had a racially disparate impact. . . . Given this remedial purpose, the First Step Act should be construed to provide courts with discretion to reduce a sentence when the statute the defendant violated has been modified by the Fair Sentencing Act to provide less severe penalties.") (internal citations omitted)); *United States v. Medina*, No. 3:05 CR 58, 2019 WL 3769598, at *11 (D. Conn. July 17, 2019) (finding that the statute, not the conduct, drives eligibility under the First Step Act and that the defendant is entitled to a "full, plenary resentencing" on all counts, including the non-covered offenses relating to powder as opposed to crack cocaine). Further, "ambiguities in the First Step Act 'must be resolved in the defendant's favor.'" *Medina*, No. 3:05 CR 58, 2019 WL 3769598, at *3 (quoting *Rose*, 379 F. Supp. 3d at 229). Consistent with the Congressional objective of the FSA and the view of other district courts in the Second Circuit, this Court may now reduce Mr. Barnes' overall sentence. *See e.g.*, *id.* at *6 (finding that because defendant should receive the "full benefit" of the First Step Act's remedial purpose, he is entitled to plenary resentencing).

**III.    The Court Should Reduce Mr. Barnes' Sentence to 180 Months.**

We ask this Court to reduce Mr. Barnes' sentence to 180 months in light of the new statutory framework, relevant mitigating factors, and Mr. Barnes' conduct while incarcerated. Section 404(b) of the FSA grants discretion to the Court to resentence a prisoner, consistent with the policy objectives of the FSA, if a reduction in sentence is warranted after consideration of the factors detailed in 18 U.S.C. § 3553(a) and the individual's post-sentencing conduct, even in cases where the penalties applicable to the eligible individual's specific conduct would remain the same under the Fair Sentencing Act. *See United States v. Williams*, No. 03 CR 795, 2019 WL 3842597, at *4 (E.D.N.Y. Aug. 15, 2019) (determining that the defendant was eligible for resentencing and "finding it appropriate to consider all applicable factors under 18 U.S.C. § 3553(a), as well as the defendant's post-sentencing conduct while in prison"); *see also Rose,* 379 F. Supp. 3d at 233 (stating that the district court must "be able to consider the most recent evidence of a defendant's life and characteristics").

For Mr. Barnes, the 18 U.S.C. § 3553(a) factors weigh in favor of sentence reduction.  Factors under § 3553(a) require the Court to impose a punishment that reflects the seriousness of the offense; promotes respect for the law and provides just punishment for the offense; affords adequate deterrence to criminal conduct; protects the public from further crimes of the defendant; and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  In weighing those factors, the Court's most fundamental responsibility is to impose a sentence that is "sufficient, but not greater than necessary."  *See* § 3553(a).  Mr. Barnes' current sentence of twenty-five years is more than what is necessary to achieve these statutory goals.

Imposing a reduced sentence on Mr. Barnes would be consistent with the Congressional intent and understanding behind the FSA.  The FSA reflects Congress' intent to reform historic drug sentencing laws that perpetuated a system of mass incarceration, harming society and disproportionately impacting black communities.  The FSA indicates a shift in Congress' understanding of the "seriousness" of drug offenses and the "just punishment" for offenses of which Mr. Barnes was convicted.  This shift in understanding of how best to "promote respect for the law" and to "protect the public" is reflected in the FSA.[3]

A reduced sentence for the crimes of which Mr. Barnes was convicted would also afford adequate specific and general deterrence.  A sentence affords adequate deterrence to criminal conduct if it achieves (1) general deterrence, which is aimed at "generally [deterring people] from engaging in crime" and (2) specific deterrence, which is aimed at "prevent[ing] recidivism."  *United States v. Bannister*, 786 F. Supp. 2d 617, 660, 688 (E.D.N.Y. 2011) (finding sentences imposed on eleven youthful defendants involved in drug trafficking scheme because of statutory minima were "disproportionate to the crimes committed and the backgrounds of the defendants.").  Mr. Barnes has spent his formative years incarcerated and has lost countless hours with family and friends.  He has borne significant punishment for what he acknowledges were serious offenses.  At the same time, we ask the Court to recognize Mr. Barnes' immense efforts toward rehabilitation; he has taken advantage of the programs offered in prison and prepared himself to contribute positively to society, while maintaining a consistently positive disciplinary record.

---

[3] With regard to the "seriousness" of Mr. Barnes' offense, if Mr. Barnes was sentenced under the Fair Sentencing Act, the 21 U.S.C. § 851sentencing enhancement no longer applies to the charges for which he was convicted under the FSA. (FSA § 404(a) (amending 21 U.S.C. § 851).  Mr. Barnes' prior convictions no longer trigger the penalty enhancement under § 851 because he never served a prior term of imprisonment longer than twelve months.  *See* Pre-Sentence Report, Nov. 12, 2006 ¶ 171-76 (noting that Mr. Barnes served one to three years when in fact he only served nine months in Putnam County.)

When determining the prior sentence of 300 months, Judge Robinson anchored his determination to the "initial benchmark" of the Guidelines life sentence; post-Fair Sentencing Act, the benchmark has shifted. *See* Sentencing Tr. 10:10-16:7, 19:18-21 (finding an offense level of forty-five and a Guideline recommended sentence of life); *see also Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) ("The Guidelines are the framework for sentencing and anchor the district court's discretion.") (quotations and alterations omitted). Mr. Barnes' Guidelines range is now 360-life, based on a total offense level of forty-two. Two levels are added to the new base offense level of thirty-four[4] for Mr. Barnes' role, and four levels are added for the kidnapping cross reference pursuant to Guidelines § 2A4.1(7)(b). Adding two levels for the multiple count adjustment brings Mr. Barnes' total offense level to forty-two.

Departure from the Guidelines, which are advisory, is appropriate. *See Gall v. United States*, 552 U.S. 38, 46 (2007); *see also United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) ("The district courts have discretion to select an appropriate sentence, and in doing so are statutorily bound to consider the factors listed in § 3553(a), including the advisory Guidelines range."). In 2010, the District Court saw fit to depart downward, recognizing the impact of Mr. Barnes' history of family abuse and injustice in the disparate sentences received by other members of his family involved in the conspiracy with similar culpability. *See* Sentencing Tr. 52:6-55:15; J., Statement Reasons, Aug. 5, 2010, ECF No. 575; *see also* J., *United States v. Yusef Barnes*, No. 04 CR 00186 04 (S.D.N.Y. Nov. 26, 2008) (sentencing Yusef Barnes to 120 months for crack cocaine conspiracy under § 841(b)(1)(A)); J., *United States v. Dawud Barnes*, No. 04 CR 00186 01 (S.D.N.Y. June 4, 2010) (sentencing Dawud Barnes to 216 months for involvement in RICO conspiracy).[5] However, at the time of sentencing, the Court's discretion was constrained by the applicable statutory minimum; the calculus has now changed. We ask that the Court exercise its discretion and reduce Mr. Barnes' sentence in light of the new Guidelines benchmark, Mr. Barnes' mitigating family history, and his tireless efforts toward rehabilitation while incarcerated. A twenty-five year sentence is more punishment than necessary to achieve the goals of imprisonment and, in light of the FSA and its underlying goal of reducing over-incarceration, we ask the Court to consider a sentence of 180 months instead.

**IV.     The Court Should Take into Account Mr. Barnes' Youth at the Time of His Offenses.**

---

[4] The two level reduction in Mr. Barnes offense level from thirty-six to thirty-four reflects the Sentencing Commission's amendment of § 2D1.1(c) to the Guidelines on November 1, 2014, reducing the base offense level for offenses involving controlled substances. See Guidelines § 2D1.1(c); Guidelines Supp. App. C, Amend. 782.

[5] Both Yusef and Dawud Barnes have since been released from federal custody.

8

In determining the appropriate sentence, the Court should consider Mr. Barnes' youth at the time he became involved with his older brothers' drug distribution enterprise. All of Mr. Barnes' offenses were committed when he was a teenager and young adult. PSR ¶ 171–66. Since Mr. Barnes was sentenced in 2010, neurological science has increasingly supported the notion that there is a fundamental difference between the adolescent and adult mind and how adolescent neurology renders the individual less able to assess consequences and more prone to risk-taking. *See Miller v. Alabama*, 567 U.S. 460, 489 (2012) (holding that mandatory life-without-parole sentences for all children seventeen or younger convicted of homicide are unconstitutional, contravening Supreme Court precedent that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.")

As the Supreme Court has recognized, neurological science has shown that in ways which are legally significant, adolescence marks a "time of immaturity, irresponsibility, impetuousness and recklessness . . . and [a] condition of life when a person may be most susceptible to influence and to psychological damage." *See id*. at 476 (internal citations and quotations omitted); *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982) (holding that the defendant's rights under the Eighth and Fourteenth Amendment were violated when the sentencing judge refused to consider the full body of mitigating evidence, including the defendant's family history and emotional disturbance when imposing the death penalty). In *United States v. Rosario*, Judge Ross explained that "due to neurobiological immaturity, adolescents and older adolescents (18-21), continue to demonstrate difficulties in exercising self-restraint, controlling impulses, considering future consequences and making decisions independently from their peers." No. 99 CR 533, 2018 WL 3785095, at *2 (E.D.N.Y. Aug. 9, 2018) (resentencing juvenile defendant serving a life sentence to twenty-eight years in consideration of *Miller v. Alabama,* defendant's rehabilitation in prison over the past twenty years, and defendant's youth at the time of the offense).

When he was fifteen years old, Mr. Barnes left his family home to escape his mother's abusive boyfriend. In an effort to support himself, he followed his older brothers into the drug trade. When he was twenty-one years old, Mr. Barnes again followed his older brothers in conduct which resulted in his current incarceration. He takes full responsibility for his actions, but his decision to participate must be understood in the context of childhood and adolescent cognitive development. The violent offense for which Mr. Barnes is now serving a twenty-five year sentence remains the only violent offense he has committed. *See* Ex. I (indicating that Mr. Barnes is not considered a violent offender by the Bureau of Prisons). When viewed in this light, it becomes clear that fifteen years (180 months) is still a substantial sentence, which is "sufficient but not greater than necessary" to satisfy the statutory purposes of sentencing, including the seriousness of the offense. *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of the statute].").

We also ask that the Court consider the mitigation report prepared by Nancy Tricamo in support of this motion, attached as Exhibit A.  Ms. Tricamo is a mitigation specialist, licensed clinical social worker, and experienced psychotherapist.  As Ms. Tricamo details in her report, Mr. Barnes' childhood and adolescence were marked by poverty, abusive father figures—his own biological father abandoned the family when his youngest sister was born with a serious congenital illness—and a school system inadequately equipped to address Mr. Barnes' educational needs.  While Mr. Barnes' childhood does not excuse his behavior, it does provide necessary context.

### V.     Mr. Barnes' Post-Sentencing Conduct Reflects His Long-Term Commitment to Rehabilitation.

When resentencing Mr. Barnes, this Court can consider any relevant factors, including post-sentencing rehabilitation.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("Evidence of post-sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."); *see also, e.g.*, *United States v. Powell*, 360 F. Supp. 3d 134, 140 (N.D.N.Y. 2019) (considering defendant's rehabilitation and disciplinary history); *United States v. Simons*, 375 F. Supp. 3d 379, 388 (E.D.N.Y. 2019) (considering defendant's educational record, family and community ties).  Mr. Barnes' record while incarcerated has been a testament to the sincerity of his statement at sentencing: "I will never make the same mistakes as before.  I will only be responsible for helping others.  I will only be responsible for being a positive influence."  Sentencing Tr. 46:21-24.

### A.     Mr. Barnes Has Continually Seized Opportunities for Vocational Training and Education While Incarcerated.

Mr. Barnes has been a model prisoner.  Even in the face of adversity, Mr. Barnes' defining characteristics remain his demonstrated resilience and a profound desire for rehabilitation.  Over the course of his incarceration, Mr. Barnes has received over thirty-five certificates of achievement for his completion of continuing educational programs in business, interpersonal communication, and statistics.  *See* Exs. 4, 5.  He has devoted significant effort toward programs and classes found to lower recidivism rates and increase prospects of gaining employment upon release.  *See* Bureau of Justice Assistance of the U.S. Department of Justice, *How Effective is Correctional Education: Results of a Meta-Analysis* ("The higher-quality research studies (Level 4 and 5) indicate that, on average, inmates who participated in correctional education programs had 43 percent lower odds of recidivating than inmates who did not.").  He attended multiple reentry workshops, including the Victim Impact Program[6] and those sponsored by the

---

[6] The Victim Impact Program helps inmates gain insight into the effects of their crimes by inviting crime victims to speak about how crime impacted their lives.

10

Career Connection Program,[7] the "Fairshakes Reentry Workshop," and the "Second Chance Workshop with the Mayor of Bridgeport, Connecticut." *See* Ex. D. After participating in the Victim Impact Program, Mr. Barnes was selected by the program coordinator to act as a Victim Impact Coordinator, serving as a teaching assistant in subsequent classes.

Mr. Barnes has demonstrated his commitment to rehabilitation by investing significant hours in long-term training programs. He completed two 2000-hour housekeeping apprenticeships with the Department of Labor, requiring over six years of training. He also completed the five-year SERVSAFE certification and performed so well that upon completion, he was asked to become a SERVSAFE tutor.[8] SERVSAFE provides individuals with the requisite training to safely handle food and the required sanitary levels in any food service establishment. The SERVSAFE program "is the most intensive and extensive of the food-handler certifications offered by the [Bureau of Prisons]." *See id*.

While developing strong vocational skills, teaching, and taking courses at Federal Correctional Facility ("FCI") Danbury, Mr. Barnes has also demonstrated a commitment to serving the larger community both within and beyond the federal penitentiary system. He volunteered in the Career Center and helped plan and coordinate Family Day—a day for inmates' family members to visit the prison, featuring various events and activities for children. In preparation for Family Day, Mr. Barnes created a brochure to assist families and children with an incarcerated family member by providing guidance on coping mechanisms and managing the emotional trauma associated with having an incarcerated parent. *See* Ex. E.

Mr. Barnes also led a number of charitable fundraisers at Danbury, including for the Ronald McDonald House. His impulse to teach and to heal led him to translate his personal trauma into novels and poetry so that others might read his words and find guidance through their shared hardship. *See* Ex. F. He is the author of four self-published novels, drawing from his experience of "life on the streets." Through fiction, his novels explore the process of acknowledging the consequences of your actions and finding a path away from a life of crime.

---

[7] The Career Connection Program is an inmate and staff collaborative program that seeks to address recidivism risk factors by connecting inmates with outside organizations that can support their transition back into society after the inmate is released.

[8] *See also* Summary Reentry Plan—Progress Report (Oct. 10, 2018) (indicating that "since his employment in the Food Service Department Inmate Barnes, Tuere reg. no. 84034-054 has been and exemplary employee. . . . Mr. Barnes has been a huge asset to the Food Service Department."). Ex. C, Work Assignment Summary.

### B. Mr. Barnes' Release Plan Provides for Steady Employment and a Stable Home Environment.

After his release, Mr. Barnes plans to live with his partner, Michelle Nevarez, and her four children in Massachusetts. Mr. Barnes and Ms. Nevarez have been in a committed relationship for three years and identify as husband and wife. In July 2018, the two fulfilled their religious obligations in marriage by participating in a ceremony officiated by Mr. Barnes' friend and spiritual advisor, Omar Teagle. Mr. Barnes' and Ms. Nevarez' application for legal marriage was approved by the Bureau of Prisons but has not yet been finalized. Ms. Nevarez is a licensed practical nurse and a law-abiding citizen. She offers a strong support system and is prepared to help her husband navigate his re-entry into society, including by contacting potential employers on his behalf.

Mr. Barnes also has the benefit of support from a wide network of family and friends who have witnessed his growth while incarcerated. Their letters attest to his rehabilitation. *See* Ex. H. When he is released, Mr. Barnes has several prospects for employment, including a job offer from Rise-N-Step, a national advocacy organization that works to reduce recidivism and help former inmates successfully reintegrate into society. Rise-N-Step has offered Mr. Barnes the position of State Director for the state of Massachusetts, where he plans to reside with Ms. Nevarez and her children. *See* Ex. G.

### Conclusion

Working with unrelenting dedication to acknowledge and grow from his past mistakes, Mr. Barnes has cultivated the necessary skills and emotional resources to become a productive member of society. The First Step Act grants district courts broad discretion to reduce sentences imposed under the excessively-harsh penalty structure for crack cocaine related offenses that Congress has now rejected. Given the significance of the requested hearing, we believe that hearing from Mr. Barnes directly will be helpful "for the Court to render a fair and appropriate sentence."[9] Accordingly, we request the Court permit Mr. Barnes the opportunity to be heard before exercising the broad discretion granted by § 404.

As Mr. Barnes' exemplary record illustrates, he has worked consistently to rehabilitate himself and his fellow inmates while incarcerated. In recognition of these

---

[9] Mem. Endorsement 2, *United States v. Rose*, No. 03 CR 1501 (S.D.N.Y. April 16, 2019) (finding that although "defendant's presence at a sentence reduction hearing may not be required by Federal Rule 43 of Criminal Procedure, the Court concludes that [Defendant's] presence at the hearing is necessary for the Court to render a fair and appropriate sentence in this case."); T. Proceedings Judge Rakoff, 23:18-25:3 *United States v. Martinez*, No. 04 CR 48 (S.D.N.Y. May 30, 2019) (reflecting defendant's presence and testimony at oral argument against the Government's objection).

efforts, the mitigating factors surrounding his conviction, and the shift in the applicable statutory framework, we ask the Court to reduce Mr. Barnes' sentence to 180 months.

Dated: November 14, 2019

                          RESPECTFULLY SUBMITTED

                          /s/ Elisabeth Shane
                          Elisabeth Shane
                          Mica Michelle Rollock

                          DEBEVOISE & PLIMPTON LLP
                          919 Third Avenue
                          New York, New York 10022
                          (212) 909-6000
                          eashane@debevoise.com
                          mmrollock@debevoise.com

                          *Attorneys for Defendant Tuere Barnes*

CC: AUSA Rebecca Dell (via ECF)