UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    Plaintiff,

-against-

TUERE BARNES,

                    Defendant.

04 Cr. 186 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Tuere Barnes' motion for resentencing under the First Step Act ("FSA")(dkt. no. 693). For the reasons set out below, the motion is GRANTED.

    I.   FACTUAL BACKGROUND

    On May 22, 2009, Defendant was found guilty after a seven-week jury trial before the Honorable Stephen C. Robinson of seven counts: Count One (racketeering in violation of 18 U.S.C. § 1962(c)); Count Two (racketeering conspiracy, in violation of 18 U.S.C. § 1962(d)); (iii) Count Three (conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 18 U.S.C. § 846); Counts Twelve through Fourteen (kidnapping, conspiracy to kidnap, and conspiracy to murder Eddy Solano-Herrera, in violation of 18 U.S.C. § 1959(a)); and Count Thirty-Two (possession of a firearm in relation to the kidnapping of Eddy Solano-Herrera, in violation of 18 U.S.C. § 924(c)). With respect to Count Three, the jury found that at least 50 grams of cocaine

1

base or crack cocaine were reasonably foreseeable to the defendant.
Trial Tr. 3870.

Evidence at trial showed that, between approximately January
1995 and June 2006, Defendant, along with his two brothers and
others known and unknown, participated in a violent narcotics
trafficking enterprise in Peekskill, New York called the "Barnes
Brothers Organization," which engaged in narcotics trafficking,
murder, attempted murder, kidnapping, and other acts of violence.
(Presentence Investigation Report, dated November 5, 2009 ("PSR")
¶¶ 1-7, 125.) During the kidnapping and attempted murder of Eddy
Solano-Herrera by Defendant and others, a firearm was brandished
and used to threaten and beat Solano-Herrera.  (Id. ¶ 125.)

On July 30, 2010, Defendant appeared for sentencing. In
connection with sentencing and for the purposes of calculating the
applicable sentencing range under the United States Sentencing
Guidelines, Judge Robinson determined that Defendant was
responsible for at least 5 kilograms of crack cocaine.
Specifically, Judge Robinson stated:

> There was a fair amount of testimony, including that of Eddy
> Solano-Herrera, who talked about Mr. Tuere Barnes purchasing
> approximately 50 to a hundred grams of crack cocaine a week.
> There was testimony of Mr. Giomar Diaz, who testified that he
> sold over five kilograms of cocaine, of crack cocaine, to the
> defendant and over, I think, a couple of kilograms of powder
> cocaine. There was also a fair amount of testimony from Brian
> Conklin on this issue. And I cannot find that this conspiracy
> consisted of anything less than five kilograms of crack
> cocaine during its existence and Mr. Tuere Barnes'
> participation.

(Sent. Tr. 10-11.)

After making this finding and conducting a grouping analysis, Judge Robinson concluded that Defendant had a base offense level of 36. (Id. 12.) Judge Robinson then added two points for Defendant's role in the offense as either a "supervisor or manager of this drug organization" and another two points for obstructing justice for Defendant's perjured testimony during trial. (Id. 12-15.) Judge Robinson added another four points because the kidnapping was done in conjunction with a narcotics offense. Id. 15-16. However, Judge Robinson noted that the guidelines provided for a cap at forty-three. See 2008 U.S. Sentencing Guidelines § 2A4.1(7)(B). Judge Robinson finally determined that the combined offense level was forty-five because of the multiple-count adjustment under § 3D1.4. (Sent. Tr. 16.) Based on a Criminal History Category of IV, Defendant's recommended guidelines was life imprisonment. (Id. 19.) Judge Robinson sentenced Defendant to (i) 300 months on Counts One, Two, Twelve, Thirteen, Fourteen, and Thirty-Two, and (ii) 240 months on Count Three, to run concurrently. (Id. 56.) While recognizing the wide-ranging drug conspiracy in which he participated and the fact that he provided perjured testimony at trial, Judge Robinson explained that a below-guidelines sentence was warranted because of Defendant's difficult upbringing. (Id. 52-56.) Judge Robinson also imposed a three-year

term of supervised released and a special assessment of $700. (Id. 56-57.)

On September 4, 2012, the Second Circuit affirmed Defendant's conviction. (Dkt. No. 623.) On November 25, 2014, this Court denied Barnes' motion for a new trial. (Dkt. No. 638.) On August 31, 2015, this Court also denied Defendant's motion under 28 U.S.C. § 2255.

II.  APPLICABLE LAW

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." United States v. Dillon, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). Title 18, United States Code Section 3582(c)(1)(B) provides one such circumstance: "[A] court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." (Emphasis added). Section 404(b) of the First Step Act provides, in relevant part, that a court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." This provision satisfies the express permission required under 18 U.S.C. § 3582(c)(1)(B) to modify an already imposed term of imprisonment by making retroactive the portions of the Fair Sentencing Act that lowered statutory penalties for certain offenses involving cocaine base. See, e.g., United States v.

4

Wirsing, 2019 WL 6139017, at *7 (4th Cir. Nov. 20, 2019) ("We hold that § 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion."); United States v. Williams, No. 00 CR. 1008 (NRB), 2019 WL 5791747, at *5 (S.D.N.Y. Oct. 17, 2019) (construing a First Step Act motion as brought pursuant to 18 U.S.C. § 3582(c)(1)(B)); United States v. Davis, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (same); United States v. Potts, 2019 WL 1059837, at *2-3 (S. D. Fla. Mar. 6, 2019) ("§ 3582(c) provides the procedural vehicle whereby this Court may modify Defendant's sentence."); United States v. Copple, 2019 WL 486440, at *2 (S.D. Ill. Feb. 7, 2019) ("The Court believes the better vehicle to impose a reduced term of imprisonment [under Section 404 of the First Step Act] is § 3582(c)(1)(B).").

III. DISCUSSION

The parties initially disagreed about whether Defendant is eligible for resentencing under the FSA but, following the Court of Appeals' decision in United States v. Davis, No. 19-874, 2020 WL 3023063 (2d Cir. June 5, 2020), the parties agree that he is eligible for resentencing.

Section 404(b) of the FSA grants discretion to the Court to resentence a prisoner, consistent with the policy objectives of the FSA, if a reduction in sentence is warranted after consideration of the factors set out in 18 U.S.C. section 3553(a) and the individual's post-sentencing conduct. See United States

v. Williams, No. 03 Cr. 795, 2019 WL 3842597, at *4 (E.D.N.Y. Aug. 15, 2019) (determining that the defendant was eligible for resentencing and "finding it appropriate to consider all applicable factors under 18 U.S.C. section 3553(a), as well as the defendant's post-sentencing conduct while in prison"). Here, the Section 3553(a) factors counsel resentencing to time served plus one week.

There is no doubt that Defendant's offenses are serious; he participated in serious drug-trafficking conspiracies, conspiracies to kidnap and murder an individual, and possessed a firearm in connection with the kidnapping plot. On the other hand, Defendant has served some fourteen years, sixteen years if good time credit is counted--a serious amount of time, to be sure. Finding sixteen years of incarceration to be sufficient, even for these serious crimes, is consistent with the FSA's purpose of ameliorating overly-harsh sentences. A sixteen-year sentence also constitutes adequate deterrence to others tempted to engage in the same conduct.

As set out below in the discussion of Defendant's post-incarceration conduct, there is no need for more than sixteen years of incarceration to protect the public from further crimes of this Defendant or to provide him with educational or vocational training.

The most persuasive portion of Defendant's motion is the discussion of his post-conviction conduct.  As set out in his motion papers (dkt. no. 693 at pp. 10-11), Defendant has been a model prisoner.  He has received over thirty-five certificates of achievement for completing educational programs in business, interpersonal communications, and statistics.  Defendant has participated in several programs and classes found to lower recidivism rates and has otherwise devoted himself to preparing to be a productive member of society by, for example, completing two 2000-hour housekeeping apprenticeships with the Department of Labor, requiring over six years of training.  He has also completed the five-year SERVESAFE certification that provides training in safe food handling.  Indeed, he performed so well in the SERVESAFE program that he was asked to become a tutor in that program.

While preparing himself, Defendant also served the larger community, both within and beyond the Danbury institution.  Within Danbury, he volunteered to help plan and coordinate Family Day--a day when inmates' families visit the prison.  Part of his work included creating a brochure to assist families in coping with and managing the difficulties of having an incarcerated family member.  Beyond Danbury, Defendant led a number of charitable fundraisers benefitting, for example, Ronald McDonald House.

Continuing to demonstrate initiative, Defendant has authored four self-published novels drawing on his experience of "life on

the streets" and, as counsel characterized them, "explor[ing] the process of acknowledging the consequences of your actions and finding a path away from a life of crime." (Dkt. no. 693 at 11.)  All of these post-conviction activities demonstrate that there is no need for further incarceration to protect the public from further crimes of this Defendant.

Finally, Defendant has a release plan that will permit a stable environment and steady employment.  As set out in counsel's letter (dkt. no. 693 at 12), Defendant proposes to live with his partner, a licensed practical nurse, and her four children in Massachusetts.  Among his job prospects is an offer to be State Director for Massachusetts of Rise-N-Step, a national advocacy organization that works to reduce recidivism and help former inmates successfully reintegrate into society.  Defendant's extensive training in food safety also provides a good prospect of employment upon release.  For all of the reasons set out above, the Court finds that the section 3553(a) factors counsel resentencing of Defendant to time served plus one week.

The Court is cognizant of the Defendant's request to appear in person for resentencing.  In light of the COVID-19 pandemic and the travel difficulties it has caused and in light of the result, that request is denied.

IV.   <u>CONCLUSION</u>

For the reasons set out above, the Defendant's motion for resentencing pursuant to the First Step Act (dkt. no. 693) is <u>GRANTED</u>.   Accordingly, Defendant is resentenced to time served plus one week with the same period of supervised release and special conditions as imposed by Judge Robinson.

**SO ORDERED.**

Dated:     New York, New York
           July 7, 2020

_____
LORETTA A. PRESKA
Senior United States District Judge